IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| PIMENIO VELA HERRERA, | ) | 8:12CV321 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| TAMMY MOWRY, in their | ) | |
| individual capacity, MONTE HOVIC, | ) | |
| in their individual capacity, HAHN, | ) | |
| Deputy, in their individual capacity, | ) | |
| STEPHENS, Deputy, in their | ) | |
| individual capacity, and JEREMY | ) | |
| BRUNGARD, in their individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendants' Motion for Summary Judgment (Filing No. 39). For the reasons explained below, Defendants' motion will be granted.

Also pending is Plaintiff Pimenio Herrera's (also known as Manuel Herrera) Motion for Sanctions (Filing No. 47). For the reasons explained below, Herrera's motion will be denied.

**I. BACKGROUND**

Herrera is a pro se litigant incarcerated at a federal correctional institution in Florence, Colorado. He filed this action against Box Butte County Sheriff Tammy Mowry ("Mowry"), former Box Butte County Administrator Monte Hovik ("Hovik"), former Box Butte County Jailer Jesse Robins ("Robins"), Box Butte County Deputy Sheriff Jerod Hahn ("Hahn"), Box Butte County Deputy Sheriff J.D. Sutphen ("Sutphen"), and former Alliance Fire Department EMT Jeremy Brungard ("Brungard"). Herrera filed a Complaint and two amended pleadings that the court

considers supplemental to his Complaint.  (*See* Filing No. 1, Filing No. 12, and Filing No. 24.)  Herrera alleged in his pleadings that Hahn and Sutphen assaulted him after he refused to get dressed.  (Filing No. 24 at CM/ECF p. 3.)  Herrera also alleged that Brungard and others strapped a naked Herrera to a stretcher and then transported him from Box Butte County Jail to Scotts Bluff County Detention Center in a van with no tinting on its windows.  (*Id.*)  Herrera claimed he was transferred to Scotts Bluff County Detention Center as retaliation for filing grievances at Box Butte County Jail.  (*Id.* at CM/ECF p. 5.)  Herrera also claimed Defendants conspired to violate his constitutional rights.  (*Id.*)  For relief, Herrera requested, among other things, that the court award damages in the amount of $375,000.  (Filing No. 1 at CM/ECF pp. 6-7.)

On February 12, 2013, the court found that Herrera had sufficiently alleged Fourth and Eighth Amendment claims against Defendants in their individual capacities.  (Filing No. 13.)  The court dismissed Herrera's claims against Robins on October 22, 2013, because Herrera failed to serve him with process.  (Filing No. 46.)  Defendants Mowry, Hovic, Hahn, and Sutphen filed the summary judgment motion at issue here on September 20, 2013.  (Filing No. 39.)

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2011) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc)).  After the movant has demonstrated the absence of a genuine issue of material fact, the nonmovant must respond by submitting evidence that sets out specific facts showing that there is a genuine issue for trial.  *Id*.  In doing so, the nonmovant must substantiate her allegations with "sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy."  *Moody v. St. Charles Cnty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)).  "A mere scintilla of evidence is insufficient to avoid

summary judgment." *Id.* "The basic inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Diesel Mach., Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Jackson*, 643 F.3d at 1085 (quoting *Torgerson*, 643 F.3d at 1042).

### III.  UNDISPUTED MATERIAL FACTS[1]

1.      Herrera was arrested by the City of Alliance Police Department on September 24, 2010, on drug charges.  (Filing No. 40- 1 at CM/ECF p. 1, Mowry Aff.)

2.      Herrera was initially held at Box Butte County Jail, but on October 13, 2010, he was transferred to Scotts Bluff County Detention Center as a courtesy hold due to his behavior and disciplinary problems.  Box Butte County Jail does not have sufficient staff or equipment to handle on a long-term basis the types of behaviors Herrera exhibited.  (Filing No. 40-1 at CM/ECF pp. 1-2, Mowry Aff.)

3.      Herrera was transferred from Scotts Bluff County Detention Center back to Box Butte County Jail on January 9, 2011, to more easily accommodate his need to

---

[1]This court's local rules require the party moving for summary judgment to file a brief containing a "separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." This statement of facts must "consist of <u>short</u> numbered paragraphs, each containing pinpoint references to . . . materials that support the material facts . . . ." The opposing party must respond to the moving party's statement of material facts in a brief containing separate numbered paragraphs with citations to supporting references and with identification of material facts that are disputed. Properly-referenced material facts in the movant's statement of facts are "considered admitted unless controverted in the opposing party's response." NECivR 56.1.  The material facts below, appearing in numbered paragraphs, are those that have not been properly disputed pursuant to this court's local rules.  Although Herrera has opposed Defendants' summary judgment motion, he has elected not to support his opposition with any affidavits of his own.

attend court proceedings.  (Filing No. 40-1 at CM/ECF p. 2, Mowry Aff.)

4.      Upon returning to Box Butte County Jail on January 9, 2011, Herrera was housed in cell block 701, cell C-1.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.)

5.      After his return to Box Butte County Jail on January 9, 2011, Herrera continued to frequently exhibit behavior problems, and/or threatened staff members. As a result, Herrera was placed in segregation numerous times for various violations of jail rules and regulations.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.; Filing No. 40-11 at CM/ECF p. 1, Hovik Aff.)

6.      On January 24, 2011, jail staff searched Herrera's cell and found several items of contraband.  As discipline, Herrera received 48 hours of lock down in his cell and suspended visits until January 27, 2011.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.; Filing No. 40-11 at CM/ECF pp. 1-2, Hovic Aff.)  Subsequently, on this same day, the following additional events occurred[2]:

> 6.1.   At approximately 5:45 p.m., while deputies were passing out beverages to inmates, Herrera became verbally aggressive and was yelling, expressing anger about only getting out for half an hour from lock down for supper.  Herrera continued to yell, stripped himself of all his clothing, and proceeded to walk around the cell block completely naked.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.)

---

[2]To the extent Herrera objects to the court's consideration of the jail logs and incident reports attached to Mowry's Affidavit (*see* Herrera's Opposition at Filing No. 40 at CM/ECF pp. 3-4), his objection is overruled.  The court is satisfied that the jail logs and incident reports are admissible as business records under Fed. R. Evid. 803(6).  (*See* Filing No. 40-1 at CM/ECF p. 1, Mowry Aff. ("That at all times pertinent to the events alleged in Herrera's pleadings herein, I served as Sheriff of Box Butte County, Nebraska. My duties include administration of the Box Butte County Jail facility. I am one of the custodians of the records maintained in the normal course of business at such facility concerning facility management and the inmates housed there, which are otherwise referenced herein and attached hereto as Exhibits A through H.").)

6.2.  At approximately 6:30 p.m., Herrera was instructed to return to his cell for continued lock down.  Herrera, who was still standing naked in the cell block, did enter his cell.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.; Filing No. 40-6 at CM/ECF p. 4, Log Sheet.)

6.3.  Once back in his cell, Herrera continued to yell and began banging on his cell wall.  At approximately 7:30 p.m., Herrera was observed to have partially covered his cell window with his bed sheet.  Herrera eventually complied with staff directives to take the bed sheet off of his window.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.; Filing No. 40-6 at CM/ECF p. 5, Log Sheet.)

6.4.  At approximately 9:30 p.m., Herrera began banging on his cell walls again as well as continuously yelling.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.;  Filing No. 40-6 at CM/ECF p. 5, Log Sheet; Filing No. 40-7 at CM/ECF p. 2, Incident Report.)

7.     A few hours later in the early morning hours of January 25, 2011, at approximately 12:30 a.m., Herrera again began yelling and banging on his cell walls when he became angry after his request for Tylenol was denied.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.;  Filing No. 40-6 at CM/ECF p. 5, Log Sheet; Filing No. 40-7 at CM/ECF p. 2, Incident Report.)  Jail staff advised Herrera of the general rule that non-prescription medications are not given after lock down.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.;  Filing No. 40-6 at CM/ECF p. 7, Log Sheet; Filing No. 40-7 at CM/ECF p. 2, Incident Report.)  When Herrera persisted in his loud behavior, a decision was made to transfer him to a holding cell.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.;  Filing No. 40-6 at CM/ECF p. 7, Log Sheet; Filing No. 40-7 at CM/ECF p. 2, Incident Report.)  The following events then occurred:

7.1.  At approximately 12:40 a.m., Herrera was transported to the holding cell.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.;  Filing No. 40-6 at CM/ECF p. 7, Log Sheet; Filing No. 40-7 at CM/ECF p. 2, Incident Report.)

5

7.2.   At approximately 12:45 a.m., it was observed by jail staff that Herrera had again stripped himself of all of his clothing and used his clothing to clog the toilet and drain in the holding cell, causing the area to flood with water.  Herrera proceeded to stand naked in his cell, and stated he would calm down and go to sleep if he got Tylenol.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.;  Filing No. 40-6 at CM/ECF p. 7, Log Sheet; Filing No. 40-7 at CM/ECF p. 2, Incident Report.)

7.3.  At approximately 12:50 a.m., jail staff provided Herrera with two non-aspirin.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.;  Filing No. 40-6 at CM/ECF p. 7, Log Sheet; Filing No. 40-7 at CM/ECF p. 2, Incident Report.)

7.4.  Herrera then stated he wanted dry clothes and a blanket.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.;  Filing No. 40-7 at CM/ECF p. 2, Incident Report.)  The evidence does not reflect whether Herrera was given dry clothes and a blanket at this time.[3]

8.   Mowry was familiar with Herrera's past history of unruly behavior, and was advised of his behavior on January 24 and 25, 2011.  (Filing No. 40-1 at CM/ECF p. 3, Mowry Aff.)  Mowry was concerned that her small staff could not continue to devote so much time to dealing with Herrera's behavior problems.  (Filing No. 40-1 at CM/ECF pp. 3-4, Mowry Aff.)  Mowry was concerned about the safety and morale of her staff.  (Filing No. 40-1 at CM/ECF p. 4, Mowry Aff.)

9.   Mowry directed Robins to contact Scotts Bluff County Detention Center (a larger facility with more staff members) to ask if its officials would accept Herrera as a "courtesy hold."  (Filing No. 40-1 at CM/ECF pp. 3-4, Mowry Aff.; Filing No. 40-9, Incident Report.)  At approximately11:00 a.m. on January 25, 2011, Scotts Bluff County Detention Center notified Box Butte County staff that it would accept Herrera

---

[3]Defendants' statement of materials facts sets forth that "[a] jailer provided boxer shorts and a blanket to Herrera after finishing the cleanup of the flooded floors." (Filing No. 41 at CM/ECF p. 5.)  Herrera argues, and the court agrees, that the evidence does not reflect whether Herrera was given dry clothes and a blanket at this time.

on a courtesy hold if he were transferred there.  (Filing No. 40-1 at CM/ECF p. 4, Mowry Aff.; Filing No. 40-9, Incident Report.)

10.    On January 25, 2011, at approximately 12:00 p.m., Hahn, Sutphen, and Robins went to Herrera's holding cell in order to place him into shackles for transport to Scotts Bluff County Detention Center.  When the deputies entered the holding cell, Herrera was wearing only boxer shorts.  (Filing No. 40-10 at CM/ECF p. 1, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 1, Hahn Aff.)  The following events transpired:

10.1.  Clothing was present in the cell, and Hahn, Sutphen, and Robins asked Herrera to get dressed for his transport to Scotts Bluff County Detention Center. Herrera reacted by removing his boxer shorts, laying down, and telling the officers he would not go, and they would have to hand cuff him while he was naked because he would not get dressed.  (Filing No. 40-10 at CM/ECF pp. 1-2, Sutphen Aff.; Filing No. 40-13 at CM/ECF pp. 1-2, Hahn Aff.; Filing No. 40-1 at CM/ECF p. 4, Mowry Aff.; Filing No. 40-9, Incident Report.)

10.2.  Hahn, Sutphen, and Robins each again asked for Herrera to get dressed so that he would not have to be transported naked.  Herrera refused and cursed at Hahn, Sutphen, and Robins.  (Filing No. 40-10 at CM/ECF p. 2, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 2, Hahn Aff.; Filing No. 40-1 at CM/ECF p. 4, Mowry Aff.; Filing No. 40-9, Incident Report.)

10.3.  Hahn, Sutphen, and Robins then placed handcuffs on Herrera. (Filing No. 40-10 at CM/ECF p. 2, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 2, Hahn Aff.; Filing No. 40-9, Incident Report.)  The evidence submitted by Defendants establishes that Herrera physically resisted as he was being handcuffed.  However, Herrera alleges that he did not resist.

10.4.  Once handcuffed, Herrera refused to walk by himself and had to be carried to a waiting transport van in an enclosed sally port.  When being carried out of the holding cell, Herrera continued to physically resist the officers and

staff perceived him to be deliberately throwing his head at the cell door and cement wall in an effort at self-harm. (Filing No. 40-10 at CM/ECF p. 2, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 2, Hahn Aff.; Filing No. 40-9, Incident Report.)

10.5.  When Hahn, Sutphen, and Robins attempted to place Herrera in the transport van, he again became physically aggressive and staff perceived him to be deliberately trying to hit his head on the side of the cage in the van in an effort at self-harm. (Filing No. 40-10 at CM/ECF p. 2, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 2, Hahn Aff.; Filing No. 40-9, Incident Report.)

10.6.  Robbins ran around to the front of the van in order to stabilize Herrera's upper body to prevent him from further attempts to harm himself. (Filing No. 40-9, Incident Report.)

10.7.  Hahn, Sutphen, and Mowry each felt that Herrera was too combative to be transported without more secure restraints for his own safety and that of the officers. (Filing No. 40-10 at CM/ECF p. 2, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 2, Hahn Aff.; Filing No. 40-1 at CM/ECF p. 5, Mowry Aff.)

10.8.  Knowing that the restraint chair possessed by Box Butte County Jail would not fit in the transport van, Mowry called Alliance Rescue to seek assistance with the transport. (Filing No. 40-1 at CM/ECF p. 5, Mowry Aff.)

10.9.  Alliance Rescue would not transport Herrera by ambulance because he was not injured, but agreed to provide a backboard to restrain Herrera for his own safety during the transport in the van. While waiting for Alliance Rescue's arrival, Herrera, who still refused to walk on his own, was carried back into a holding cell in the jail by Hahn and Sutphen and placed in the restraint chair. (Filing No. 40-10 at CM/ECF p. 2, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 2, Hahn Aff.; Filing No. 40-1 at CM/ECF p. 5, Mowry Aff.)

10.10.  At approximately 12:30 p.m., Brungard arrived with a backboard. Robins and Hovik removed Herrera from the restraint chair and Brungard strapped him to the backboard for transport.  During this time, Herrera attempted to spit on anyone who was in his proximity.  (Filing No. 40-9, Incident Report; Filing No. 40-10 at CM/ECF p. 2, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 2, Hahn Aff.)

10.11.  Hahn and Sutphen removed the back seats of the transport van and then carried Herrera on the backboard to the transport van.  (Filing No. 40-1 at CM/ECF p. 5, Mowry Aff.; Filing No. 40-9, Incident Report; Filing No. 40-10 at CM/ECF p. 2, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 2, Hahn Aff.)

10.12.  Hahn and Sutphen secured the backboard to the floor in the back of the transport van so that it could not move around during the transport. (Filing No. 40-1 at CM/ECF p. 6, Mowry Aff.; Filing No. 40-9, Incident Report; Filing No. 40-10 at CM/ECF p. 2, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 2, Hahn Aff.)

11.     The transport van is a white county government van with dark tinted back windows.  (Filing No. 40-1 at CM/ECF p. 6, Mowry Aff.; Filing No. 40-10 at CM/ECF pp. 3-4, Sutphen Aff.)

11.1.  Sutphen and Hahn were the only persons present with Herrera during the transport to Scotts Bluff County Detention Center.  (Filing No. 40-1 at CM/ECF p. 6, Mowry Aff.; Filing No. 40-10 at CM/ECF p. 3, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 3, Hahn Aff.)

11.2.  The van left at approximately 1:00 p.m. Transport took place on Highway 385 to Highway 26, and took approximately 55 minutes.  (Filing No. 40-10 at CM/ECF p. 3, Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 3, Hahn Aff.)

12.     At approximately 2:00 p.m., on January 25, 2011, Herrera arrived at

9

Scotts Bluff County Detention Center.  (Filing No. 40-10 at CM/ECF p. 3, Sutphen
Aff.; Filing No. 40-13 at CM/ECF p. 3, Hahn Aff.)

> 12.1.  Herrera was unloaded from the transport van in the enclosed sally port of
> the Scotts Bluff facility.  (Filing No. 40-10 at CM/ECF p. 3, Sutphen Aff.;
> Filing No. 40-13 at CM/ECF p. 3, Hahn Aff.)

> 12.2.  Male Scotts Bluff County employees assisted Hahn and Sutphen in
> unloading Herrera from the transport van.  (Filing No. 40-10 at CM/ECF p. 3,
> Sutphen Aff.; Filing No. 40-13 at CM/ECF p. 3, Hahn Aff.)

> 12.3.  After unloading Herrera from the van, Hahn and Sutphen left Herrera in
> the custody of Scotts Bluff County staff and returned to the Box Butte County
> Jail.  (Filing No. 40-10 at CM/ECF p. 3, Sutphen Aff.; Filing No. 40-13 at
> CM/ECF p. 3, Hahn Aff.)

13.    Herrera was thereafter held in the Scotts Bluff County Detention Center
until he was transferred to prison to serve his sentence following his conviction of a
drug charge.  (Filing No. 40-1 at CM/ECF p. 6, Mowry Aff.)

14.    The Box Butte County Jail has a grievance procedure.  Herrera has never
attempted to file any kind of grievance with Box Butte County Jail officials regarding
the events he alleges concerning his transport from Box Butte County Jail to Scotts
Bluff County Detention Center on January 25, 2011.  (Filing No. 40-1 at CM/ECF p.
2, Mowry Aff.)

15.    The only time periods when females were present during the above events
is when two off-duty female jailers happened to be present in the booking area during
the second attempt to move Herrera to the transport van, and when Mowry was
otherwise present during the two transport attempts.  The route between the south

10

holding cell and the transport van did not include any inmate areas. (Filing No. 40-1 at CM/ECF p. 4, Mowry Aff.)

16.    Mowry, Sutphen, Hahn, and Hovic never heard Herrera request his clothing at any point during the above described events.  (Filing No. 40-1 at CM/ECF p. 5, Mowry Aff.; Filing No. 40-10 at CM/ECF p. 3, Sutphen Aff.; Filing No. 40-11 at CM/ECF pp. 2-3, Hovic Aff.; Filing No. 40-13 at CM/ECF p. 3, Hahn Aff.)

## IV.  DISCUSSION

### A.    Exhaustion of Remedies

Defendants argue they are entitled to summary judgment because Herrera failed to exhaust administrative remedies prior to filing this lawsuit.  The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).   To satisfy the exhaustion requirement, a grievance must alert prison officials to the claims the plaintiff has included in the complaint, but need only provide the level of detail required by the grievance system itself. Jones v. Bock, 549 U.S. 199, 218-19 (2007).  The purpose of the exhaustion requirement is to give officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." Porter v. Nussle, 534 U.S. 516, 524-25 (2002).  Administrative exhaustion is an affirmative defense that defendants have the burden to plead and prove. See Jones, 549 U.S. at 218-19.

Defendants' evidence shows that Box Butte County Jail has a grievance procedure, and Herrera never grieved any of the events alleged in his Complaint and Supplements.  The evidence also shows Herrera was aware of and had previously utilized the grievance procedure on numerous occasions to protest various issues regarding his confinement.  Indeed, Herrera alleges in this action that Box Butte

County Defendants retaliated against him in response to his "excessive grievances writing." (Filing No. 24 at CM/ECF p. 5.)

Herrera did not come forward with any evidence to rebut Defendants' evidence; and he has not provided evidence that he was prohibited from pursuing administrative remedies.[4]  Moreover, transfer from one facility to another does not by itself excuse a plaintiff from exhausting his administrative remedies. *See*, *e.g.*, *Blank v. Tabera*, 544 Fed.Appx. 480, 481 (5th Cir. 2013) (stating transfer to separate facility did not excuse obligation to exhaust administrative remedies); *Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 223 (6th Cir. 2011) ("The PLRA requires that a prisoner at 'any' jail must exhaust 'such administrative remedies as are available.'  It does not require that the remedies must be available at the very facility where the prisoner is currently located; instead, any 'available' remedy must be exhausted, and that includes remedies at [the plaintiff's] past location."); *Medina-Claudio v. Rodriguez-Mateo*, 292 F.3d 31, 35 (1st Cir. 2002) ("[t]he fact that [plaintiff] happened to be a prisoner in various locations, and under the custody of different officials, does not affect his obligation to exhaust his administrative remedies before filing suit.").  Herrera's claims must be dismissed because the undisputed evidence shows that Herrera failed to exhaust administrative remedies prior to commencing this action.

---

[4]Herrera alleges in his unsworn Opposition that he was informed by a prison administrator at Scotts Bluff County Detention Center not to pursue the administrative process any further because a remedy was not available, and also advised Herrera to "file on them." (Filing No. 42 at CM/ECF p. 7.)  However, this unsworn submission is not supported by affidavit and will not be considered as evidence.  Even if the court were to consider the administrator's purported statement to Herrera in its determination of this issue, the statement could be interpreted as directing Herrera to file his grievance with Box Butte County Jail officials—"file on them"—because a remedy was not available at Scotts Bluff County Detention Center.  Regardless, based on the record, the undersigned judge cannot say such a statement (if made) thwarted Herrera's right to utilize the grievance procedure at Box Butte County Jail.  *See Chellette v. Harris*, 229 F.3d 684, 688 (8th Cir. 2000) ("Section 1997e(a) says nothing about a prisoner's subjective beliefs, logical or otherwise, about the administrative remedies that might be available to him.").

In addition, as discussed below, the court finds that this action must be dismissed because no reasonable fact-finder could conclude that a constitutional violation occurred.

## B.      Qualified Immunity

Defendants argue that they are entitled to summary judgment because they are immune from suit in their individual capacities under the doctrine of qualified immunity. "In resolving questions of qualified immunity at summary judgment, courts engage in a two-pronged inquiry. The first asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, . . . show the officer's conduct violated a [federal] right." *Smith v. Conway Cnty., Ark.*, No. 13-3095, ---F.3d----, 2014 WL 3446420 (8th Cir. July 16, 2014) (quoting *Tolan v. Cotton*, --- U.S. ----, ----, 134 S.Ct. 1861, 1865 (2014) (per curiam)) (internal quotation marks omitted). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at ----, 2014 WL 3446420, at *4 (quoting *Tolan*, at ----, 134 S.Ct. at 1866). "A right is clearly established if its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Mitchell v. Shearrer*, 729 F.3d 1070, 1076 (8th Cir. 2013)).

Liberally construed, Herrera alleges Defendants subjected him to cruel and unusual punishment, violated his right to privacy, conspired to violate his constitutional rights, and retaliated against him in violation of the First Amendment. For the reasons that follow, the court finds that no reasonable fact-finder could conclude that Defendants violated Herrera's constitutional rights.

### 1.      Excessive Force

Herrera alleges Hahn and Sutphens instructed him to get dressed and, when he did not comply, they jumped on top of him to shackle him, which caused him pain and made it difficult for him to breathe.  (Filing No. 1 at CM/ECF p. 3, Complaint; Filing

No. 24 at CM/ECF pp. 2-3, Supplement to Complaint.)

Because Herrera was a pretrial detainee, the county "[could] 'detain him to ensure his presence at trial and [could] subject him to the restrictions and conditions of the detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.'" *Smith*, ---F.3d----, 2014 WL 3446420, at *3 (quoting *Bell v. Wolfish*, 441 U.S. 520, 536-37 (1979)). "Although 'the Eighth Amendment has no application' until there has been a 'formal adjudication of guilt,' the Fourteenth Amendment gives state pretrial detainees—just as the Fifth Amendment gives federal pretrial detainees—rights which are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *Walton v. Dawson*, 752 F.3d 1109, 2014 WL 2053835, at *4 (8th Cir. May 20, 2014)). "Conduct constituting 'cruel and unusual punishment' *a fortiori* constitutes punishment. And the Due Process Clause prohibits *any* punishment of a pretrial detainee, be that punishment cruel-and-unusual or not.'" *Id.* (quoting *Edwards v. Byrd*, 750 F.3d 728, 732 n. 2 (8th Cir. 2014)).

In an Eighth Amendment excessive force case, "the core judicial inquiry is 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Santiago v. Blair*, 707 F.3d 984, 990 (8th Cir.2013)). "Whether the force used was reasonable is 'judged from the perspective of a reasonable officer on the scene' and in light of the particular circumstances." *Id.* (quoting *Story v. Norwood*, 659 F.3d 680, 686 (8th Cir.2011)). "In making such a determination, 'it may also be proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)).

Having reviewed all of the materials submitted, the court finds that Defendants applied force to subdue and restrain Herrera in a good-faith effort to maintain or restore discipline, and no reasonable jury could conclude that the force was applied

maliciously and sadistically to cause harm. The competent and undisputed evidence provided by Defendants establishes that Herrera refused to get dressed for his transport to Scotts Bluff, he physically resisted while the officers attempted to handcuff him, and he had a history of behavioral and disciplinary problems. Once handcuffed, Herrera refused to walk on his own, he had to be carried by the officers, and he was engaged in violent and self-destructive behavior.

Herrera alleges in his Complaint that he did not resist the officers' attempt to handcuff him.[5] Even accepting Herrera's version of the events as true—i.e., that Defendants jumped on top of him to shackle him while he did not resist, which caused him pain—Herrera has provided no evidence to support a finding that Defendants used force in a malicious or sadistic effort to cause him harm. The record clearly establishes that the officers acted in good faith to restrain Herrera in order to transport him to Scotts Bluff, and acted reasonably and promptly to prevent him from injuring himself or others.

## 2.    Conditions of Confinement

Liberally construed, Herrera alleges Defendants subjected him to cruel and

---

[5]Herrera's Complaint and Supplements to his Complaint are not verified. *See Roberson v. Hayti Police Dep't*, 241 F.3d 992, 995 (8th Cir. 2001) ("Although a party may not generally rest on his pleadings to create a fact issue sufficient to survive summary judgment, the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion."). In the interest of assisting appellate review, the court notes that Herrera filed a "Response to Defendants Reply" in which he purports to declare that everything he stated in the "original Complaint and any subsequent Amendments" was done "under penalty of perjury." (Filing No. 48 at CM/ECF p. 1.) The court does not consider Herrera's "Response to Defendants Reply" part of the summary judgment record because this court's local rules prohibit parties from filing further briefs or evidence without the court's leave once the summary judgment motion, reply brief, and opposing brief have been submitted. NECivR 7.1(c). Regardless, even if the court were to consider the Complaint (Filing No. 1) and the two Supplements (Filing No. 12 and Filing No. 24) properly verified, nothing set forth in these pleadings is sufficient to survive Defendants' summary judgment motion.

unusual punishment when they strapped him naked to a backboard and transported him from Box Butte County Jail to Scotts Bluff County Detention Center.  (Filing No. 1 at CM/ECF p. 5, Complaint; Filing No. 24 at CM/ECF p. 3, Supplement to Complaint.)

Conditions of confinement constitute cruel and unusual punishment where those conditions result in a serious deprivation of "the minimal civilized measure of life's necessities" under contemporary standards of decency.  *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  To prevail on a conditions of confinement claim, a plaintiff must show: (1) that the prison conditions pose a substantial risk of harm; and (2) that the prison official was deliberately indifferent to that risk.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

When viewed in the light most favorable to Herrera, the evidence shows that Herrera was held naked in a restraint chair and later on a backboard for a total of approximately two hours.[6]  Herrera was naked during this time—or, as he alleges, "exposed to the elements"—because he chose to be naked.  When officers asked Herrera to get dressed so that he could be transported to Scotts Bluff, Herrera removed his boxer shorts and advised the officers they would have to transport him naked. There is no evidence in the record that prison officials were motivated by a desire to inflict unnecessary and wanton pain.  Moreover, officers strapped Herrera to a backboard because he refused to walk on his own, he was combative, and he deliberately threw his head against the cell door, a cement wall, and the side of the cage of the transport van.  Defendants' measured response to Herrera's antics ensured that Herrera did not harm himself during his transport to Scotts Bluff.

### 3.    Right to Privacy

---

[6]Defendants do not concede that Herrera was left uncovered during the entirety of his transport to Scotts Bluff.  (*See* Filing No. 41 at CM/ECF p. 15, Brief.)  However, the court views the evidence in a light most favorable to Herrera at the summary judgment stage, and draws all reasonable inferences in Herrera's favor.

Herrera alleges Defendants violated his right to privacy when they strapped him to a backboard naked and transported him from Box Butte County Jail to Scotts Bluff County Detention Center.  (Filing No. 24 at CM/ECF p. 3, Supplement.)

"The Fourth Amendment protects the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.'  The Fourteenth Amendment extends this constitutional guarantee to searches and seizures by state officers." *Burlison v. Springfield Pub. Sch.*, 708 F.3d 1034, 1039 (8th Cir. 2013).  *See Hill v. McKinley*, 311 F.3d 899 (8th Cir. 2002) (applying Fourth Amendment "reasonableness" standards to claim of female pretrial detainee that her right to privacy was violated when a male guard required her to disrobe in his presence).

Herrera's Fourth Amendment claim fails for many of the same reasons his conditions-of-confinement claim fails; specifically because Defendants acted reasonably in restraining and transporting a recalcitrant inmate who refused to get dressed despite being given ample opportunity to do so.  Here, the most relevant facts are that Herrera stripped himself naked and then refused to get dressed, was restrained and transported by *male* officers, and was only briefly within the view of female officers.  In addition, the undisputed facts are that Herrera cursed and spit at the officers, refused to walk by himself, and deliberately threw his head against the cell door, a cement wall, and the side of the cage of the transport van.  *See Hill*, 311 F.3d at 903-04 (female pretrial detainee's constitutional rights were violated when defendants allowed her to remain completely exposed to male guards for a substantial period of time after the threat to security and safety had passed).

Herrera alleges in his Opposition that during his transport to Scotts Bluff, Hahn and Sutphens stopped for gas, opened the back door to the transport van, and exposed Herrera's naked body to passing motorists.  (Filing No. 42 at CM/ECF p. 12.)  This assertion, which was not set forth in the Complaint or either of the two Supplements to the Complaint, is wholly unsupported by sworn admissible evidence.  Moreover, Herrera's Opposition was not verified under oath.  Even assuming Hahn and Sutphens

opened the van doors at some point during Herrera's transport to Scotts Bluff, Herrera's general assertion that his body was exposed to passing motorists is insufficient to create a fact question as to the reasonableness of the officers' conduct where there is no evidence that any motorist actually saw him.  There is substantial evidence in the record, however, to indicate that Defendants responded appropriately to legitimate safety concerns.

After balancing Defendants' concerns about safety and their need to transport and restrain Herrera, the undersigned judge concludes Defendants acted reasonably. Any right to privacy Herrera had under the circumstances was significantly outweighed by the potential danger Herrera posed to himself and to the officers on duty. *See Birdine v. Gray*, 375 F.Supp.2d 874, 880 (D.Neb. 2005) ("Because Birdine disrobed despite being told not to do so as the officers were transporting him to the holding cell, and because he refused to put his clothes back on in the face of repeated opportunities to do so, there was no constitutional violation in transporting him while naked and allowing him to remain naked in the holding cell.").  *See also Hill*, 311 F.3d at 903-04 (female pretrial detainee's constitutional rights were not violated by the use of male guards in an otherwise justified transfer of an unruly and naked female).

## 4.    Conspiracy

Herrera alleges Defendants conspired "to strap [him] to the back board without any coverings, leaving [him] completely exposed."  (Filing No. 24 CM/ECF p. 3.)

> "To prove a 42 U.S.C. § 1983 conspiracy claim, a plaintiff must show: (1) that the defendant conspired with others to deprive him of constitutional rights; (2) that at least one of the alleged co-conspirators engaged in an overt act in furtherance of the conspiracy; and (3) that the overt act injured the plaintiff. *Askew v. Millerd*, 191 F.3d 953, 957 (8th Cir. 1999). The plaintiff is additionally required to prove a deprivation of a constitutional right or privilege in order to prevail on a § 1983 civil conspiracy claim. *Id.*

*Burton v. St. Louis Bd. of Police Com'rs*, 731 F.3d 784, 798 (8th Cir. 2013).

The undisputed evidence is that Herrera was naked for his transport to Scotts Bluff because he chose to remove his clothing, refused to get dressed, and demanded that Defendants transport him naked. In addition, the undisputed evidence is that Defendants strapped Herrera to a backboard because he was too combative to be transported without first being securely restrained. There is no evidence that Defendants reached an understanding to violate Herrera's constitutional rights. Indeed, the record reflects that Defendants took reasonable steps to prevent Herrera from harming himself and the officers on duty.

### 5.     Retaliation

Herrera alleges Mowry ordered his transfer from Box Butte County Jail to Scotts Bluff County Detention Center in response to his "excessive grievance" writing. (Filing No. 24 CM/ECF p. 3.)

> To establish a § 1983 claim for retaliation in violation of the First Amendment, a plaintiff must allege (1) that it engaged in a protected activity, (2) that the defendants responded with adverse action that would "chill a person of ordinary *808 firmness" from continuing in the activity, and (3) that "the adverse action was motivated at least in part by the exercise of the protected activity." *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004).

*L.L. Nelson Enter., Inc. v. Cnty. of St. Louis, Mo.*, 673 F.3d 799, 807-08 (8th Cir. 2012).

The undisputed evidence is that Mowry ordered Herrera's transfer because she believed Herrera's behaviors "had escalated to an impermissible level," she "did not feel [her] staff would be able to continue to handle [Herrera's] behaviors," and she "was concerned about the safety and morale of [her] staff members." (Filing No. 40-1 at CM/ECF pp. 3-4.) There is no evidence in the record to support a claim that Herrera was transferred to another jail in retaliation for his excessive grievance writing.

19

For the reasons discussed above, the court finds that no reasonable juror could conclude that any of the named Defendants violated Herrera's constitutional rights in the manner alleged in the Complaint or in the Supplements to the Complaint.

## V.  HERRERA'S MOTION FOR SANCTIONS

Herrera asks that Defendants be ordered to pay him $200.00 pursuant to Rule 56(h) of the Federal Rules of Civil Procedure "for submitting affidavits and declarations in bad faith." (Filing No. 47.) Herrera directs the court to his submissions in opposition to Defendants' summary judgment motion as support for his request, but he makes no showing in these submissions that Defendants affidavits contain false statements.  Accordingly, Herrera's motion will be denied.

IT IS THEREFORE ORDERED that:

1.     Defendants' Motion for Summary Judgment (Filing No. 39) is granted. Herrera's claims against Defendants are dismissed with prejudice.

2.     A separate judgment will be entered in accordance with this Memorandum and Order.

3.     Herrera's Motion for Sanctions (Filing No. 47) is denied.

4.     Defendants' request that the court strike Filing Number 48 from the record (Filing No. 50) is denied.

5.     In light of the foregoing, Herrera's Motion for Status (Filing No. 56) is denied as moot.

20

6.      The clerk's office is directed to update the court's records to reflect the proper spelling of the following Defendants' names: Monte Hovik (listed on the Docket Sheet as "Monte Hovic"), Jerod Hahn (listed on the Docket Sheet as "Hahn"), and J.D. Sutphen (listed on the Docket Sheet as "Stephens").

DATED this 18th day of August, 2014.

BY THE COURT:

s/ Joseph F. Bataillon
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.